ORIGINAL

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED

THE DATE OF ENTRY IS
ON THE COURT'S DOCKET
TAWANA C. MARSHALL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BROOK MAYS MUSIC COMPANY, | § | |
| DEBTOR. | § | |
| | § | |
| PRINCIPAL LIFE INSURANCE | § | CIVIL ACTION NO. 3:06-CV-2180-B |
| COMPANY and PETULA | § | |
| ASSOCIATES, LTD., | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
| DEFENDANT. | § | |

**REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF TEXAS (JUDGE JANE J. BOYLE) TO ADOPT
PROPOSED MEMORANDUM OPINION AND ORDER GRANTING THE MOTION OF
DEFENDANT JP MORGAN CHASE BANK, N.A. FOR SUMMARY JUDGMENT**

In an Order dated June 13, 2007 [DE # 10], the United States

District Court for the Northern District of Texas, the Honorable

Jane J. Boyle, adopted the bankruptcy court's Report and

Recommendation on Motion to Withdraw the Reference dated March 9,

2007 [DE # 9], in which the bankruptcy court concluded that: (a)

bankruptcy subject matter jurisdiction existed in the above-

referenced action, but merely non-core, "related to" matters were

involved; (b) Principal Life Insurance Company and Petula

Associates, Ltd. (collectively, the "Plaintiffs") did not consent

to the bankruptcy court entering final orders (see 28 U.S.C. §

1

15.7(c)); (c) the Plaintiffs demanded a jury trial, have jury trial rights, and did not consent to a jury trial in bankruptcy court (*see* 28 U.S.C. § 157(e)); (d) the District Court should withdraw the reference from the bankruptcy court upon certification by the bankruptcy court that the action was trial-ready; and (e) the bankruptcy court should nevertheless hear and decide all pre-trial matters. On September 8, 2009, the defendant, JP Morgan Chase Bank, N.A. (the "Defendant"), filed a Motion for Summary Judgment (the "MSJ"). The proposed Memorandum Opinion and Order (which is attached hereto) was prepared pursuant to Federal Rule of Bankruptcy Procedure 7056, to dispose of such pre-trial matter (*i.e.*, the MSJ). Since this ruling of the bankruptcy court proposes a *no-liability full summary judgment in favor of the Defendant*, and would result in a final order and judgment, the court hereby merely recommends it to the District Court, pursuant to 28 U.S.C. § 157(c)(1), for the District Court to either enter or decline.

Dated: <u>March  10 , 2011</u>

Respectfully submitted,

Stacey G. C. Jernigan
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BROOK MAYS MUSIC COMPANY, | § | CASE NO. 06-32816-SGJ-7 |
|     DEBTOR. | § | |
| | § | |
| | § | |
| PRINCIPAL LIFE INSURANCE COMPANY | § | |
| and PETULA ASSOCIATES, LTD., | § | |
| | § | |
|     PLAINTIFFS, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3508 |
| | § | |
| JPMORGAN CHASE BANK, N.A., | § | |
| | § | |
|     DEFENDANT. | § | |

## [PROPOSED] MEMORANDUM OPINION AND ORDER GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT JPMORGAN CHASE BANK, N.A. [DE # 88][1]

CAME ON FOR CONSIDERATION by the court the Motion for Summary Judgment ("MSJ") filed by Defendant JPMorgan Chase Bank, N.A. ("Chase" or "Defendant"), the Response thereto of the two Plaintiffs, Petula Associates, Ltd. ("Petula" or "Landlord") and Principal Life Insurance Company ("Principal") (collectively, the

---

[1] "DE # 88" and other similar references herein refer to the docket entry number on the Bankruptcy Clerk's PACER/ECF electronic filing system maintained in the above-referenced action.

"Plaintiffs"), the Reply thereto of Chase, and all summary judgment evidence/appendices submitted with such pleadings. Based on the summary judgment record and arguments presented in the pleadings, the court rules as follows:

INTRODUCTION

This court has jurisdiction in the above-referenced adversary proceeding ("Adversary Proceeding") pursuant to 28 U.S.C. § 1334(b). The Adversary Proceeding involves non-core, "related to" matters, pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). In an Order dated June 13, 2007, the United States District Court for the Northern District of Texas, the Honorable Jane J. Boyle, adopted the bankruptcy court's Report and Recommendation on Motion to Withdraw the Reference, dated March 9, 2007 [DE # 38], in which the bankruptcy court concluded that: (a) bankruptcy subject matter jurisdiction exists in the Adversary Proceeding, but merely non-core, "related to" matters are involved; (b) the Plaintiffs do not consent to the bankruptcy court entering final orders (see 28 U.S.C. § 157(c)); (c) the Plaintiffs demanded a jury trial, have jury trial rights, and do not consent to a jury trial in bankruptcy court (see 28 U.S.C. § 157(e)); (d) the District Court should withdraw the reference from the bankruptcy court upon certification by the bankruptcy court that the action is trial-ready; and (e) the bankruptcy court should nevertheless hear and decide all pre-trial matters.

This proposed Memorandum Opinion and Order is prepared pursuant to Federal Rule of Bankruptcy Procedure 7056, to dispose of one such pre-trial matter (*i.e.,* the MSJ). Since this ruling of the bankruptcy court proposes a ***no-liability summary judgment in favor of Defendant-Chase***, and would result in a full and final order and judgment, the court hereby merely recommends it to the District Court, pursuant to 28 U.S.C. § 157(c)(1), for the District Court to either enter or decline.

UNDISPUTED MATERIAL FACTS

The court has determined that the following material facts are not in controversy.

1. The Adversary Proceeding relates to the bankruptcy case of Brook Mays Music Company ("Brook Mays" or the "Debtor"), which was filed as a voluntary Chapter 11 reorganization case on July 11, 2006.[2] Brook Mays ultimately completed a sale of substantially all of its assets during the Chapter 11 case, and the case was converted thereafter to a Chapter 7 liquidation case, under the direction of a Chapter 7 Trustee.

2. On December 15, 2005, less than one year before Brook

---

[2] This lawsuit was originally commenced in the 116th Judicial District Court for Dallas County, Texas on October 4, 2006, as Cause No. 06-10316. Chase thereafter removed it to the United States District Court for the Northen District of Texas, pursuant to 28 U.S.C. § 1452, where the action was automatically referred to the bankruptcy court, since the action relates to a bankruptcy case. The governing complaint in this Adversary Proceeding is the Plaintiffs' Second Amended Complaint, filed on or about February 19, 2008.

Mays filed bankruptcy, Brook Mays, as Tenant, and Petula, as
Landlord, entered into a ninety-one month lease ("Lease"),
pertaining to certain nonresidential real property consisting of
121,766 square feet of warehouse space at 3940 Pipestone Road, in
Dallas, Texas.  Chase App. 154-256.[3]  The Lease, by its terms,
"is dated effective December 15, 2005."  Chase App. 157.  The
Lease was actually executed by Petula, as Landlord, seven days
after its effective date, on December 22, 2005 (but the signature
of Brook Mays is not dated).  Chase App. 184.

    3.    Brook Mays was contractually required under the Lease
to obtain an irrevocable letter of credit ("L/C") in the initial
amount of $406,000 as security for Brook Mays' obligations under
the Lease.[4]  Petula designated Principal to be the beneficiary of

---

[3] The court herein refers to the summary judgment evidence
contained in the Appendix to Defendant's Motion for Summary Judgment
as "Chase App. __" with the applicable page numbers used whenever
there is a "___."  Similarly, the court refers to the Appendix to
Plaintiffs' Response as "Pls. App. ___."

[4] The Lease contained the following relevant provisions:

    2.8  <u>Security Deposit</u>.  Tenant shall deposit an irrevocable
letter of credit as the Security Deposit with Landlord **on the date
this Lease is executed by Tenant**, which shall be held by Landlord to
secure Tenant's obligations under this Lease.  The letter of credit
shall be governed by Section 2 of the additional provisions Rider of
this Lease.

Chase App. 161 (emphasis added).  The Rider to the Lease went on to
provide at Section 2 therein:

    2.    <u>Letter of Credit</u>.  In addition and without limitation to any
other security deposit or other security held by Landlord, **on the day
the Lease is executed**, Tenant shall deposit with Landlord a clean,
unconditional and irrevocable letter of credit issued **by a bank**

4

the L/C, since Principal performed treasury functions for Petula. *See* Chase App. 239.

4. Brook Mays never actually obtained an L/C, and that is the reason for this lawsuit.

5. Brook Mays did submit to the Defendant, Chase, an Application and Agreement for an Irrevocable Standby Letter of Credit (hereinafter, the "L/C Application") on December 15, 2005 (the same day as the effective date of the Lease). Chase App. 283. The L/C Application was not executed by Chase as of the time of the execution of the Lease, and the Plaintiffs do not allege that an L/C was in place at the time of execution of the Lease. Plaintiffs merely allege that Brook Mays was required to obtain a $406,000 L/C as a condition of the Lease. But to be clear, the actual terms of the Lease required that the L/C ***be in place*** on the date of execution of the Lease. See § 2.8 of the Lease, Chase App. 161.

6. As mentioned, Brook Mays never actually obtained an L/C from Chase or any other bank. Notwithstanding this, Petula

---

***acceptable to Landlord*** in its sole judgment, automatically renewing on an annual basis, in the initial amount of Four Hundred Six Thousand and No/100ths Dollars ($406,000.00), which letter of credit shall be substantially in the form annexed hereto as Exhibit G to Rider to Lease and incorporated herein by this reference (the "Letter of Credit").

Chase App. 185 (emphasis added). The attached Exhibit G to the Rider is a form without blanks filled in for the issuer or any other pertinent data. Chase App. 239-241.

proceeded to make expensive lease improvements soon after the execution of the Lease in February 2006. Chase App. 329-340; Pls. App. 113. Specifically, Petula improved the warehouse space to suit Brook Mays' needs, retrofitting approximately 20,000 square feet of existing office space within the premises and adding additional office space, prior to Brook Mays moving into the premises. The Landlord has represented that it expended over $600,000 for Brook Mays' benefit. Chase App. 5-8.

7. In May 2006, the Plaintiffs were informed by Brook Mays that the L/C Application had been withdrawn and the L/C would not be issued. Pls. App. 316.

8. In spite of this, Brook Mays took possession of the leased premises at some point during Spring 2006 (Pls. App. 117), and Plaintiffs assert that Brook Mays defaulted under the Lease shortly thereafter (in fact, Brook Mays filed bankruptcy on July 11, 2006). Chase App. 5-8.

9. The Plaintiffs assert that they have been damaged because Brook Mays defaulted under the Lease, and the Plaintiffs should have had an L/C to look to for security but did not—*allegedly due to wrongful actions of Chase*. Plaintiffs seek actual damages of at least $406,000, plus attorney's fees and exemplary damages.

10. The Plaintiffs allege that Chase represented to Plaintiffs that it intended to issue an L/C in the amount of

$406,000 and that Petula would not have spent over $600,000 on
Lease improvements, if Chase had stated that it would not,
unequivocally, issue the L/C.  Plaintiffs allege this was a
material inducement to them entering into the Lease and agreeing
to undertake the extensive improvements.  Chase App. 3-6.

11.  The Lease provides, at Section 27.7, language stating
that the Lease constitutes the "entire agreement of the Landlord
and Tenant," that "Landlord and Tenant each acknowledge that no
representations, inducements, promises or agreements, oral or
written, have been made by Landlord or Tenant, **or anyone acting
on behalf of Landlord or Tenant**, which are not contained herein,
and any prior agreements, promises, negotiations, or
representations not expressly set forth in this Lease are of no
effect."  Chase App. 180 (emphasis added).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate whenever a movant
establishes that the pleadings, affidavits, and other evidence
available to the court demonstrate that no genuine issue of
material fact exists, and the movant is, thus, entitled to
judgment as a matter of law.  FED. R. CIV. P. 56(a); *Piazza's
Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006);
*Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 891 (E.D.
Tex. 2004).  A genuine issue of material fact is present when the
evidence is such that a reasonable fact finder could return a

verdict for the non-movant. *Piazza's Seafood World, LLC,* 448
F.3d at 752 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 248 (1986)). Material issues are those that could affect
the outcome of the action. *Wyatt v. Hunt Plywood Co., Inc.,* 297
F.3d 405, 409 (5th Cir. 2002), *cert. denied,* 537 U.S. 1188
(2003). The court must view all evidence in a light most
favorable to the non-moving party. *Piazza's Seafood World, LLC,*
448 F.3d at 752; *Lockett,* 337 F. Supp. 2d at 891. Factual
controversies must be resolved in favor of the non-movant, "but
only when there is an actual controversy, that is, when both
parties have submitted evidence of contradictory facts." *Little
v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). If the
movant satisfies its burden, the non-movant must then come
forward with specific evidence to show that there is a genuine
issue of fact. *Lockett,* 337 F. Supp. 2d at 891; *see also Ashe v.
Corley,* 992 F.2d 540, 543 (5th Cir. 1993). The non-movant may
not merely rely on conclusory allegations or the pleadings.
*Lockett,* 337 F. Supp. 2d at 891. Rather, it must demonstrate
specific facts identifying a genuine issue to be tried in order
to avoid summary judgment. FED. R. CIV. P. 56(c)(1); *Piazza's
Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F. Supp. 2d at
891. In summary, summary judgment is appropriate if the non-
movant "fails to make a showing sufficient to establish the
existence of an element essential to that party's case." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

<u>RULING AND REASONS THEREFORE</u>

As a result of an earlier ruling by this court on a Rule 12(b)(6) motion to dismiss for failure to state a claim, and the subsequent dismissal of another party pursuant to a mediated settlement,[5] there is now only one Defendant (Chase) and only three remaining counts against Chase in this Adversary Proceeding: (A) promissory estoppel; (B) tortious interference with contract; and (C) negligent misrepresentation. Monetary damages are sought for all of these. Chase App. 1-11. Here, the court concludes that the Defendant has met its burden of demonstrating that no genuine issue of material fact exists, and the Plaintiffs have not come forward with any specific evidence to show there is, indeed, a genuine issue of fact on any of these counts. Defendant is, thus, entitled to summary judgment of no-liability as a matter of law.

**A. No Sustainable Claim for Promissory Estoppel.**

With regard to this count, Plaintiffs specifically allege that Chase (a) promised Plaintiffs it would issue the L/C; (b) Plaintiffs reasonably and substantially relied on that promise by leasing the premises to Brook Mays and embarking on expenditures to improve the Lease premises for Brook Mays; (c) Chase knew or reasonably should have known that Plaintiffs would rely on

_____

[5] *See* DE #84.

Chase's promise; and (d) Plaintiffs' reliance on Chase's promise resulted in $406,000 or more in injuries. Plaintiffs' Second Amended Complaint, ¶¶ 17-19, Chase App. 7.

The elements of promissory estoppel are: (a) a promise; (b) a foreseeable reliance thereon by the promisee; and (c) substantial reasonable and detrimental reliance by the promisee. *MCN Energy Enters., Inc. v. Omagro de Columbia L.D.C.*, 98 S.W.3d 766, 774 (Tex. App.—Fort Worth 2003, pet. denied).

Chase argues that it is entitled to summary judgment on this count because Chase never made a promise to Plaintiffs. Moreover, even if a promise was made, any reliance by Plaintiffs would not have been foreseeable by Defendant or reasonable by Plaintiffs. The court agrees that Chase is entitled to summary judgment on this count as a matter of law.

The undisputed summary judgment evidence is that there was indeed no promise by Chase to Plaintiffs because there were no *direct communications* between Chase and the Landlord/Plaintiffs. The Plaintiffs' witnesses (Mr. John Gorman, real estate brokerage agent to the Plaintiffs in negotiating the Lease, and Mr. Thomas Gibson, primary counsel to Plaintiffs in negotiating the Lease) confirmed in their deposition testimony (submitted as summary judgment evidence) that the Landlord did not ever participate in negotiations of the terms of the L/C between Brook Mays and Chase. Chase App. 74 & 46A. Petula does not dispute that it

received no direct communications from Chase—rather, any communications to which it was privy were communications between Chase and the Debtor that were *forwarded* to it. Chase App. 298-323. Nevertheless, the Landlord argues that Chase made promises to issue an L/C through these indirect communications—*i.e.*, through emails occurring between December 15, 2005 and January 20, 2006, between Chase and the Debtor that were forwarded to the Landlord (*i.e.*, the Plaintiffs are essentially arguing that Brook Mays was an intermediary, and Chase knew it). Chase argues that, even if this is true (that emails of draft L/C documentation were forwarded to Petula), there is no "intermediary theory" pleaded in the Second Amended Complaint and there is no such viable theory in the law. A promise to one party cannot be extended as a promise to another. *Capital Reserve Corp. v. Day*, No. 2-03-264, 2004 WL 2793260, at *2 (Tex. App.—Fort Worth Dec. 2, 2004, pet. denied).[6]

The court agrees that as a matter of law, there could be no promise by Chase here to sustain a claim of promissory estoppel.

---

[6] There was actually some summary judgment evidence that there were certain direct communications between attorneys for Chase and attorneys for the Landlord, during **March 2006**, regarding something entirely different from the L/C—specifically, a subordination or waiver agreement, whereby any Landlord lien on Brook Mays' personal property at the Lease premises would be subordinated to or waived in favor of Chase, due to Chase's prior perfected liens on Brook Mays' personal property, pursuant to Chase's pre-existing Credit Agreement and loans made by it to Brook Mays. Pls. App. 79-80A. There is no evidence that there was any mention of the L/C at this time.

A promise must be specific and definite.  *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 555-56 (Tex. App.—San Antonio 1998, no pet.).  Indirect emails (*i.e.*, indirect communications that are forwarded by another actor) could not suffice in this regard. Moreover, even if communications between Chase and the Debtor were forwarded to the Landlord and could be treated the same as direct communications between Chase and the Landlord, the communications still were not specific and definite enough to rise to the level of a promise as a matter of law.  The summary judgment evidence reflects that never was there any commitment to issue a letter of credit.  The word "draft" was reflected again and again and again, on the email communications regarding the L/C that Plaintiffs claim to have been forwarded, and this negates any prospect of any communication regarding the L/C being definite.  The summary judgment evidence is unrefuted that the emails merely reflect discussions and forwarding of **drafts** of the L/C documents.[7]

Additionally, any reliance by the Landlord on any communications between Chase and the Debtor would not be reasonable and justifiable as a matter of law.  Specifically, it

---

[7] The unrefuted summary judgment evidence reflects that at most, Chase promised Brook Mays that it would issue the L/C once Brook Mays signed off on the draft L/C.  However, there is no summary judgment evidence suggesting that Brook Mays ever did sign off on the draft L/C and, thus, no L/C was ever issued nor was Chase obligated to issue one.  Chase App. 298; 322-323; 374; 314.

would not be reasonable to rely on a promise that an L/C would be issued. *See Absolute Res. Corp. v. Hurst Trust*, 76 F. Supp.2d 723, 734-35 (N.D. Tex. 1999) (in a case involving multiple, *direct*, alleged promises to a borrower to fund—"the deal is real and we will fund next week"—the court held no reasonable reliance by the borrower as a matter of law, determining that there were merely non-binding proposal letters and oral assurances that a deal would eventually close). In a failure to fund context, there must be a misstatement of *existing* fact. *Id.*

Additionally, Chase did not know or have reason to foresee that Plaintiffs, as a sophisticated commercial landlord and its beneficiary, would rely on alleged "promises." Generally, in Texas tort and criminal law, the question of foreseeability involves a practical inquiry based on common experience applied to human conduct. *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp. 2d 640, 645 (E.D. Tex. 2006). As stated herein, it is undisputed that Chase never communicated directly with the Plaintiffs regarding the L/C; it merely communicated with Brook Mays as borrower, as is common in banking practice. As such, it could not as a matter of law be held to the standard of knowing or reasonably anticipating that *its potential borrower's Landlord* was relying on some email as some sort of indication that Chase was committed in all events to issue the L/C. There is no summary judgment evidence that Chase was informed that the

Landlord had undertaken tenant improvements in reliance on the
L/C or that the Landlord was letting Brook Mays move in the Lease
premises in reliance on the L/C.  Case App. 121-122.

## B.  No Sustainable Claim for Negligent Misrepresentation.

Plaintiffs allege Chase (a) provided false information to
Plaintiffs in the course of business in which it had a pecuniary
interest; (b) Chase did not use reasonable care or competence in
obtaining or communicating this information; (c) Plaintiffs
justifiably relied on Chase's information; and (d) Plaintiffs
suffered loss in making the improvements to the Lease premises.

The elements of negligent misrepresentation are:  (a) a
representation was made in the ordinary course of business; (b)
the defendant supplied false information for the guidance of
others in their business; (c) the defendant did not exercise
reasonable care in communicating that information; and (d) the
plaintiff suffers pecuniary loss by justifiably relying on the
representation.  *E.g.*, *Lyda Constructors, Inc. v. Butler Mfg.
Co.*, 103 S.W.3d 632, 638 (Tex. App.—San Antonio 2003, no pet.)
(citing *Fed. Land Bank Ass'n v. Sloan*, 825 S.W.2d 439, 442 (Tex.
1991)); *McCamish, Martin, Brown & Loeffler v. F.E. Appling
Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

Chase argues that it is entitled to summary judgment on this
count because (i) Chase made no representations to the Plaintiffs
in the course of business; (ii) Chase supplied no information to

14

the Plaintiffs for the guidance of others in their business and, if any information was given, it was not false; and (iii) Chase exercised reasonable care at all relevant times in communication with Brook Mays. Moreover, a claim for negligent misrepresentation cannot be based upon a representation as to a future event; it must relate to an existing fact. Any representation arguably made by Chase would have related to a future event.

The court agrees with Chase that there is no summary evidence creating a genuine issue of whether Chase supplied false information. As in the case with the promissory estoppel theory analyzed earlier, the court concludes that Plaintiffs are improperly attempting to rely upon representations and communications between Chase and *Brook Mays* rather than communications among Chase and the Plaintiffs. It is undisputed that all of Chase's communications regarding the L/C took place between Brook Mays and Chase, and Chase never discussed matters directly with the Plaintiffs. Chase App. 34-35; 45-46C; 74; 257-282; 298-323. Moreover, as earlier indicated, even if Chase's communications *with Brooks Mays* somehow could be deemed to be "representations to the Plaintiffs in the course of business" for the "guidance of others in their business," there is no summary judgment evidence that Chase represented or unequivocally represented that it would issue an L/C. But, giving Plaintiffs

every benefit of the doubt, as this court is required to do in a summary judgment context, even if Chase, as Plaintiffs have pleaded, indeed represented that it *would* issue an L/C, this was not a statement of a current or existing fact that was false as a matter of law. Chase is not alleged to have said the L/C *had been* approved or that it *had issued* the L/C. Chase App. 3-5; 7-8. It was a statement of future action or intention. Case law has held, and this court agrees, that a statement regarding an intended future action, regardless of its truthfulness, is insufficient to establish a claim for negligent misrepresentation and is also insufficient to establish reasonable reliance. *Absolute Res. Corp.*, 76 F. Supp. 2d at 732.

Last, with regard to whether Chase exercised reasonable care with regard to its communications regarding the L/C, the court believes that it is noteworthy that banking law prohibits a lender from making disclosures regarding its borrower, except in certain limited circumstances not alleged in the case at bar. *See Fleming v. Tex. Coastal Bank of Pasadena*, 67 S.W.3d 459, 461-62 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (and statutes cited therein). So ironically, not only was Chase not communicating directly with the Plaintiffs regarding events surrounding the L/C, but it would have been legally improper for it to—absent certain circumstances that have not been pleaded here. Thus, this court cannot determine as a matter of law that

Chase did not exercise reasonable care in its communications (direct or indirect—*vis-a-vis* the Plaintiffs) when it was not and could not even be communicating with the Plaintiffs.

## C.  No Sustainable Claim for Tortious Interference.

To fully understand this count, one must start with the undisputed fact that Chase and Brook Mays had an existing borrower-lender relationship (pursuant to a Credit Agreement) prior to the time Brook Mays entered into the Lease Agreement with the Landlord.  In fact, it is a matter of public record in the Brook Mays' bankruptcy case, of which this court can take judicial notice, that Chase was the largest unpaid creditor of Brook Mays (although Chase did receive some recovery on its secured claims when Brook Mays was liquidated during the bankruptcy case).  The Plaintiffs (obviously) were not parties to that pre-existing Credit Agreement between Chase and Brook Mays. With this backdrop, Plaintiffs argue that Chase tortiously interfered with the Lease between Brook Mays and the Landlord (to which Chase was obviously not a party), by directing Brook Mays (in *February 2006*) to create a cash reserve, making Brook Mays' remaining borrowing capacity under the Credit Agreement *zero*, such that Brook Mays no longer had the ability to use the Chase Credit Agreement facility to fund the L/C.  Pls. App. 333-334. Plaintiffs have further alleged that Chase, singularly or together with a financial advisor to Brook Mays (TRG), more

generally tortiously interfered with the Lease by simply
instructing Brook Mays not to permit the L/C to be issued.   Pls.
App. 462.

The elements of tortious interference are:   (a) the
existence of a valid contract subject to interference;  (b) the
occurrence of an act of interference that was willful and
intentional;  (c) proximate causation; and (d) actual damage or
loss.   *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995).

There was no summary judgment evidence presented that Chase
genuinely interfered with the Lease.   The unrefuted summary
judgment evidence was that the Debtor's representatives decided
not to ask Chase to issue the L/C.   Chase App. 117-128; 99; 103-
104; 345-346; 120-121.   Moreover, the court cannot see how, as a
matter of law, Chase's actions—consisting solely of conversations
with its borrower and the exercise of legal rights—could be
construed to be "willful and intentional" *vis-a-vis* the
Plaintiffs.   *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843
S.W.2d 470, 472 (Tex. 1992) (holding that there must be an act
taken with the specific intent and for the purpose of interfering
with the subject contract).   Even giving the Plaintiffs every
benefit of the doubt, that the "acts" of Chase complained of were
its specific acts in February 2006 of imposing certain
requirements of a cash reserve on its borrower Brook Mays (which
allegedly meant Brook Mays would not have the Chase credit

facility to fund the L/C), there can be no specific intent and purpose of interference (and, thus, no tortious interference claim), when the person (Chase) is undertaking an act that is merely exercising a legal right. *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000). Case law has elaborated that just exercising a colorable legal right is sufficient, even if that proves ultimately mistaken. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 211 (Tex. 1996). Chase argues that any position it was taking with regard to its borrower with regard to Brook Mays' cash reserves was merely the exercise of legal rights under Chase's own credit agreement (thus, exercising a colorable legal right), and this cannot, as a matter of law, equate with specific intent to interfere with the Lease. This court agrees. At the very least, Plaintiffs must prove "the defendant took an active part in persuading the party to breach its contract" and "proof that the defendant benefitted from the broken contract is not sufficient to establish proximate cause." *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139-140 (Tex. App.—Eastland 1992, writ denied). Here, the Landlord has not presented any summary judgment evidence that Chase took any active part in persuading the Debtor to breach the Lease. Moreover, the actions of Chase in February 2006 of creating a special reserve were ***well after*** the execution of the Lease (December 2005) wherein the L/C was required by the Landlord

19

prior to the execution of the Lease.

Finally, there is no summary judgment evidence that, as a matter of law, could establish proximate causation, *vis-a-vis* the Plaintiffs and their damages for Lease improvements, when the Landlord began the Lease improvements and allowed Brook Mays to move into the Lease premises at a time when the Plaintiffs had not been supplied any evidence that an L/C was actually in place.

**CONCLUSION**

For all of the foregoing reasons, this court concludes that summary judgment should be granted entirely in favor of Chase.

The court will report and recommend to the United States District Court for the Northern District of Texas, the Honorable Jane J. Boyle, that a Final Summary Judgment in favor of Defendant Chase be issued consistent herewith.

**# # # END OF PROPOSED MEMORANDUM OPINION AND ORDER # # #**